KUHN, J.
 

 Plaintiff, the Louisiana Department of Transportation and Development (“DOTD”), appeals a judgment that denied its motion to vacate an order that dismissed its action with prejudice on the ground of abandonment.
 
 [1]
 
 We amend the trial court’s judgment and, as amended, we affirm.
 

 I. PROCEDURAL AND FACTUAL BACKGROUND
 

 On March 23, 2006, DOTD filed a petition for damages, naming Bayou Fleet, Inc. (“Bayou Fleet”) and James M. Elsik as defendants. Therein, DOTD alleged that on March 25, 2005, the motor vessel “BAYOU BLACK,” owned by Bayou Fleet and piloted by Mr. Elsik, collided with and caused damage to the Bayou Blue Pontoon Bridge, which is owned by the State of Louisiana. DOTD asserted that the bridge had been damaged and that repairs were necessary. DOTD prayed for a judgment against the defendants for all damages to which it was entitled, together with legal interest and costs. When the suit was filed, plaintiffs withheld service on the defendants.
 

 In an April 24, 2006 letter to James M. Bookter, counsel for DOTD, Bayou Fleet’s president, Robin Durant, acknowledged receipt of the petition and further stated, in pertinent part:
 

 We acknowledge this filing was prompted to preserve prescription, but it was also our understanding that service was to be withheld until such time as your office could provide backup documentation for your claim. Our survey- or, Hjalmar Briet[,] has been patiently waiting to receive that documentation for review and approval. As I have mentioned several times, this claim exceeds our deductible and must be approved by the surveyor representing our Underwriter prior to settlement. I have called on numerous occasions to request this information but have yet to receive it.
 

 By letter dated June 20, 2006, Mr. Book-ter responded to Mr. Durant, stating as follows, in pertinent part:
 

 I am enclosing a copy of the final Project Completion Report, which contains the final cost itemization for the bridge repairs undertaken. I will send additional documents to back up the amounts shown, as I obtain them.
 

 
 *1070
 
 Also, you will likely be served with a citation and copy of the petition in the next few days, if you have not been served already. As I mentioned, this is only a procedural step, as service is required within 90 days of the filing of the suit, or it may be dismissed. There is no need for you to respond or file any type of pleading in response to the suit at this time. I will continue to work with you to try and bring this to an amicable resolution, and, in any event, I will not take any adverse action against you without providing you thirty (30) days written notice.
 

 Thereafter, Susan Stafford, counsel for DOTD, sent a letter dated October 31, 2008, to Mr. Durant, wherein she indicated that she had been recently “reassigned” to this claim and enclosed documents pertaining to repair costs, indicating she was hopeful the matter could be resolved soon. On November 17, 2008, Ms. Stafford filed a motion to substitute herself in place of Mr. Bookter as counsel of record for DOTD, and the trial court signed the order of substitution on that date.
 

 On November 20, 2008, Mr. Durant responded by letter to Mr. Bookter stating that he was “somewhat taken aback” because DOTD’s June 2005 claim in the amount of $33,615.88 had increased to $76,317.25 by October 2008. Ms. Stafford replied by letter dated December 2, 2008, which stated that additional costs had been incurred in connection with the bridge repair, and she enclosed supporting documentation for the additional costs. By letter dated January 6, 2009, to Mr. Durant, Ms. Stafford provided additional documentation of repair costs and inquired about settlement of the claim, as follows, in pertinent part:
 

 I am enclosing a copy of my letter of October 31, documenting cost of repair to the Bayou Blue Pontoon Bridge. What is the status of payment for this claim? If we cannot resolve this matter by February 15, 2009 it will be necessary for you to answer the lawsuit filed against Bayou Fleet.
 

 Mr. Durant answered in a letter dated February 10, 2009, wherein he stated, in pertinent part, as follows:
 

 Our marine surveyor, [Mr. Brief], has finally had a chance to retrieve his old records in order to review your recent submittal of costs relative to this nearly 4 year old incident. I would remind you that the 4 year delay has not been ours. Attached is a copy of his claim review dated February 2, 2009.
 

 You will note from the review that you have still not provided the information, and proper backup he had requested three years ago.... Of particular concern is your continual failure to provide a drawing or detailed description of what was in place prior to the incident. We still do not know what was replaced. It is also obvious that significant other work was done at the same time, which was not related to the March 26, 2005 incident....
 

 ... I do not believe either of us is interested in litigating this matter and for my part, I would like to put this behind me. Three years ago I verbally offered [Mr. Bookter] $20,000.00 to settle this matter.
 

 What do you have in mind to put this behind us?
 

 Ms. Stafford responded to Mr. Durant by letter dated February 19, 2009, which stated as follows, in pertinent part:
 

 I have enclosed a copy of a letter dated April 4, 2005 which outlined the damage caused by the Bayou Black. The estimated cost of repair was $93,000.00.
 

 
 *1071
 
 [[Image here]]
 

 The repairs were made pursuant to “as built” plans which are available for you or your marine surveyor to review at DOTD | ^Headquarters in Baton Rouge. Please telephone me if you would like to review the plans.
 

 [[Image here]]
 

 I am open to a reasonable offer of settlement which I will forward to the undersecretary who must approve any settlement for less than actual cost. Your surveyor has indicated approval of $44,824.78. If he approves [a designated] invoice, I will recommend settlement of this claim for $48,244.48.
 

 I have enclosed photographs of the damage and the bridge tenders report.
 

 I ask that you present me with an offer on or before Thursday March 5.
 

 Ms. Stafford’s next letter to Mr. Durant was dated April 16, 2009, and it stated as follows:
 

 Enclosed please find a copy of the “Motion for Preliminary Judgment by Default!,]” which I have filed with the Court. I am also enclosing my letter of February 19, 2009 wherein we offered to settle this claim for $48,244.48.
 

 Please respond to my settlement offer. If you are unwilling to settle this claim for $48,244.48 you should take whatever action necessary to protect your legal rights.
 

 On April 17, 2009, Ms. Stafford filed a motion for a preliminary judgment of default, which was granted on April 20, 2009.
 

 Mr. Durant responded to Ms. Stafford in an April 20, 2009 letter, which stated in pertinent part, as follows:
 

 With all due respect, I fail to understand why you and [DOTD] have been so unwilling and uncooperative in providing proper documentation in connection with this claim.... Our underwriters and surveyors must have proper back up documentation. Why can’t you have someone send [us] a set of drawings? I may be wrong, but if we cannot settle this matter, I believe the court will compel [DOTD] to provide our discovery requests....
 

 Should you wish to settle this matter in the absence of the long since requested backup information, we would agree to pay $40,000.00 to [DOTD] in full and final settlement.
 

 ... The motion suggests we have failed to appear or answer for some three years, while in fact all of the delay and failure to answer has been yours. [Mr. Bookter]
 
 specifically
 
 agreed not to file a Default Judgment and agreed to give us 30 days written notice before any adverse actions were taken. Your letter of April 16, 2009 seems to indicate we are still trying to settle this matter. Your action is contrary to the agreement I had with Mr. Bookter and, although you are once again handling this matter, I would think it only proper and ethical that you be bound by the agreement I made with Mr. Bookter on June 20, 2006.
 

 With respect, I would request you withdraw your “Default Judgment” and, should you be unable to accept our offer of settlement, replace the “Default Judgment” with a 30 Day Motion to compel and we will respond to the suit.
 

 On April 27, 2009, Bayou Fleet, which at that point was represented by counsel, filed an
 
 ex parte
 
 motion for dismissal on the basis of abandonment. On that same date, the trial court signed an order dismissing the matter with prejudice at DOTD’s cost on the basis of abandonment.
 

 Ms. Stafford also sent an April 28, 2009 letter to Mr. Durant, wherein she stated:
 

 
 *1072
 
 I am writing in response to your letter of April 20, 2009. Enclosed please find my letter of January 6, 2009 giving you until February 15 to file an answer to the lawsuit. [DOTD] does not accept your offer to settle this claim for $40,000.00....
 

 My offer to settle this claim for $48,244.48 is still open.
 

 I intend to move forward with this legal action.
 

 DOTD filed a timely motion to vacate the trial court’s April 27, 2009 order of dismissal. By judgment dated July 16, 2009, the trial court denied DOTD’s motion, and DOTD timely appealed this judgment, urging the trial court erred in: 1) faffing to find that the agreement between DOTD and Bayou Fleet, referenced in the June 20, 2006 letter, interrupted the abandonment period; 2) failing to find that Bayou Fleet waived its right to plead abandonment; and 3) finding the parties had not participated in formal discovery.
 
 [2]
 

 II. ANALYSIS
 

 Relative to abandonment, La. C.C.P. art. 561 provides, in pertinent part:
 

 A. (1) An action ... is abandoned when the parties fail to take any step in its prosecution or defense in the trial court for a period of three years....
 

 [[Image here]]
 

 B. Any formal discovery as authorized by this Code and served on all parties whether or not filed of record, including the taking of a deposition with or without formal notice, shall be deemed to be a step in the prosecution or defense of an action.
 

 The law imposes three requirements on a plaintiff to prevent abandonment: (1) a plaintiff must take some “step” towards prosecution of their lawsuit,
 
 i.e.,
 
 formal action must be taken before the court to hasten the suit toward judgment or a deposition must be taken; (2) the step must be taken in the proceeding and, with the exception of formal discovery, must appear in the record of the suit; and (3) lathe step must be taken within the legislatively prescribed time period of the last step taken by either party.
 
 See Clark v. State Farm Mut. Auto. Ins. Co.,
 
 00-3010, p. 6 (La.5/15/01), 785 So.2d 779, 784.
 

 Louisiana Code of Civil Procedure article 561 A(3) provides that abandonment is self-executing; it occurs automatically upon the passing of three years without a step being taken by either party, and it is effective without court order.
 
 Clark,
 
 00-3010 at p. 6, 785 So.2d at 784. Article 561 is to be liberally construed in favor of maintaining a plaintiffs suit, and any reasonable doubt about abandonment should be resolved in favor of allowing the
 
 *1073
 
 prosecution of the claim and against dismissal for abandonment.
 
 Clark,
 
 00-3010 at pp. 8-10, 785 So.2d at 785-87. The courts have declined to allow form to prevail over substance in determining whether an action has been abandoned, and they have likewise declined to allow suits to be dismissed as abandoned based on technical formalities.
 
 Id.
 
 at p. 9, 785 So.2d at 786. In sum, abandonment is not meant to dismiss actions on mere technicalities, but to dismiss actions that in fact clearly have been abandoned.
 
 Id.
 
 The policy underlying this requirement is the prevention of protracted litigation without a serious intent to hasten the claim to judgment. As such, article 561 provides for dismissal of those cases in which a plaintiffs inaction during the legislatively ordained period has clearly demonstrated his abandonment.
 
 Jones v. Phelps,
 
 95-0607, p. 4 (La.App. 1st Cir.11/9/95), 665 So.2d 30, 33,
 
 writ denied,
 
 95-2907 (La.2/2/96), 666 So.2d 1104.
 

 Whether a step in the prosecution of a case has been taken in the trial court for a period of three years is a question of fact, subject to a manifest error analysis on appeal.
 
 Brown v. Kidney and Hypertension Associates, L.L.P.,
 
 08-0919, p. 7 (La.App. 1st Cir.1/12/09), 5 So.3d 258, 264. On the other hand, whether a particular act, if proven, precludes abandonment is a question of law that we review by simply determining whether the trial court’s interpretative decision is correct.
 
 Id.
 

 After DOTD’s petition was filed on March 23, 2006, the only pleading that was filed in the record within the next three years was DOTD’s motion and order to substitute counsel. DOTD does not dispute that this action was not a step towards the prosecution of its lawsuit. Such a motion grants to counsel the right to take “steps” toward prosecution of his chent’s case, but it does not itself constitute such a “step.”
 
 Chevron Oil Co. v. Traigle,
 
 436 So.2d 530, 532-33 (La.1983). Accordingly, we consider DOTD’s contentions that there was an interruption of this three-year abandonment period and that Bayou Fleet waived its right to plead abandonment.
 

 A. Effect of the June 20, 2006 letter
 

 DOTD asserts that the agreement between it and Bayou Fleet, whereby DOTD agreed not to take any adverse action against Bayou Fleet without providing thirty days written notice, interrupted the abandonment period, with the three-year period beginning to run again on June 20, 2006. We find no authority to support this assertion. Although the agreement justified inaction on Bayou Fleet’s part until DOTD provided notice in accordance with the agreement, it did not justify inaction on DOTD’s part; the agreement did not preclude or relieve DOTD from taking a step to hasten its suit to judgment.
 
 See Compensation Specialties, L.L.C. v. New England Mut. Life Ins. Co.,
 
 08-1549R, p. 10 (La.App. 1st Cir.2/13/09), 6 So.3d 275, 282,
 
 writ denied,
 
 09-0575 (La.4/24/09), 7 So.3d 1200;
 
 see also Porter v. Progressive Specialty Ins. Co.,
 
 99-2542, p. 3 (La.App. 1st Cir.11/8/00), 771 So.2d 293, 294-95. Informal written correspondence confirming an informal extension of time to respond cannot be construed as an interruption of the abandonment period.
 
 See Compensation Specialties, L.L.C.,
 
 08-1549 at p. 10, 6 So.3d at 282. The agreement, although it was not entered into on the record, is similar to a joint motion to continue a matter indefinitely, which is not considered a step in the prosecution of a case, because it is not intended to hasten the matter to judgment.
 
 See Hutchison v. Seariver Maritime, Inc.,
 
 09-0410, p. 6
 
 *1074
 
 (La.App. 1st Cir.9/11/09), 22 So.3d 989, 993-94,
 
 writ denied,
 
 09-2216 (La.12/18/09), 23 So.3d 946. The agreement and the correspondence that followed it actually demonstrated DOTD’s resolve to settle the matter out of court rather than in court. Further, extrajudicial efforts, such as informal correspondence between the parties, have uniformly been considered insufficient to constitute a step for purposes of interrupting or waiving abandonment.
 
 Compensation Specialties, L.L.C.,
 
 08-1549 at p. 10, 6 So.3d at 282. Accordingly, the trial court correctly found that the agreement between DOTD and Bayou Fleet did not interrupt the abandonment period.
 

 B. Waiver of the Right to Plead Abandonment
 

 DOTD argues that Bayou Fleet waived its right to plead abandonment by acknowledging that it owed a debt to DOTD and by entering into the agreement that required a 30-day notice to Bayou Fleet before it was required to answer. DOTD asserts in brief that “[t]he qualitative and cumulative effect of [Bayou Fleet’s] actions including indefinite extension to answer the lawsuit, its efforts to obtain additional documents from DOTD, and obtaining a survey report to confirm DOTD’s cost of repair certainly lulled [DOTD] into thinking [Bayou Fleet] would not dispute liability for damaging the bridge.”
 

 Certain actions taken by a defendant, which are inconsistent with the intent to treat the case as abandoned, can constitute a waiver of the right to have a case dismissed for abandonment.
 
 See Clark,
 
 00-3010 at p. 7, 785 So.2d at 785. This exception is based on the well-established rule that prescription can be interrupted by acknowledgment.
 
 See Clark,
 
 00-3010 at pp. 11-12, 785 So.2d at 787.
 

 An acknowledgment is “a simple admission of liability resulting in the interruption of prescription that has commenced to run, but not accrued, and may be made on an informal basis.”
 
 Lima v. Schmidt,
 
 595 So.2d 624, 634 (La.1992). In
 
 Lima,
 
 595 So.2d at 634, the supreme court explained the distinction between a conditional settlement negotiation and an unconditional acknowledgment, as follows:
 

 A tacit acknowledgment occurs when a debtor performs acts of reparation or indemnity, makes an unconditional offer or payment, or lulls the creditor into believing that he will not contest liability. Conversely, mere settlement offers or conditional payments, humanitarian or charitable gestures, and recognition of disputed claims will not constitute acknowledgments.
 

 Once abandonment has occurred, action by the plaintiff cannot breathe new life into the suit.
 
 Clark,
 
 00-3010 at p. 15, 785 So.2d at 789. A defendant’s postabandonment actions, however, can serve to waive his right to plead abandonment. Id.
 
 [3]
 
 Our court has recognized that the waiver exception to La. C.C.P. article 561 applies only where, after the abandonment period has accrued, a defendant has taken steps that facilitated the judicial resolution of the dispute on the merits and |12were an expression of the defendant’s willingness or consent to achieve judicial resolution of the dispute.
 
 Satterthwaite v. Byais,
 
 05-0010, p. 4 (La.App. 1st Cir.7/26/06), 943 So.2d 390, 393. In
 
 Satterthwaite,
 
 05-0010 at pp. 4-5, 943 So.2d at 393-94, this court provided examples of post-abandonment actions by a de
 
 *1075
 
 fendant that have been found to constitute a waiver:
 

 [These examples include] submission of a case for decision, participation in a status conference and signing a case management schedule, and the filing of an answer and reconventional demand. Furthermore, an insurer’s unconditional tender to a plaintiff to satisfy the statutory requirement of LSA-R.S. 22:658(A)(1), even though of an informal nature, has been held to constitute a waiver. Other examples of post-abandonment conduct by defendants that have been held sufficient to waive abandonment include seeking security for costs and provoking or responding to discovery.
 

 (Citations and footnotes omitted.)
 

 Satterthwaite
 
 also recognized that a defendant’s participation in post-abandonment settlement negotiations was found to reflect the defendant’s intent to achieve a non-judicial resolution of the dispute, which, by definition, does not constitute a waiver of the right to plead abandonment.
 
 Satterthwaite,
 
 05-0010 at p. 5, 943 So.2d at 394. This ruling is in conformity with the jurisprudence holding that extrajudicial efforts, such as informal settlement negotiations between the parties, are insufficient to constitute a step for purposes of interrupting or waiving abandonment.
 
 Id.
 

 In the instant case, we find no tacit acknowledgment within Bayou Fleet’s correspondence with DOTD. The correspondence evidences that Bayou Fleet informally sought information from DOTD and that Bayou Fleet and DOTD engaged in informal settlement negotiations. These negotiations neither constituted an acknowledgment of a debt nor a waiver of the right to have the suit declared abandoned.
 
 See Porter,
 
 99-2542 at p. 3, 771 So.2d at 295;
 
 cf. Clark,
 
 00-3010 at pp. 16-18, 785 So.2d at 790-91. The qualitative effect of Bayou Fleet’s actions is that it acted in its own interest to obtain information with which it could evaluate DOTD’s claim, but Bayou Fleet did not acknowledge liability. It did not facilitate the judicial resolution of the dispute on the merits in any way; Bayou Fleet’s letters demonstrate an attempt to achieve a nonjudicial resolution of the dispute.
 
 See Porter,
 
 99-2542 at pp. 4-5, 771 So.2d at 295. Accordingly, the trial court properly concluded that Bayou Fleet’s actions did not constitute an acknowledgment or a waiver of its right to have DOTD’s suit declared abandoned.
 

 C. Formal Discovery
 

 Paragraph B of La. C.C.P. art. 561 provides, “Any
 
 formal discovery
 
 as authorized by this Code and
 
 served on all parties
 
 whether or not filed of record, including the taking of a deposition with or without formal notice, shall be deemed to be a step in the prosecution or defense of an action.” (Emphasis added.) Any formal discovery in a case is considered a step in the prosecution, whether or not filed in the record, provided it has been served on all the parties.
 
 Brown,
 
 08-0919 at p. 9, 5 So.3d at 266.
 

 Relying on the correspondence between it and Bayou Fleet, DOTD urges formal discovery took place throughout the three-year abandonment period. Because the correspondence occurred when Bayou Fleet was not represented by counsel, DOTD urges that it is irrelevant that the correspondence was not captioned as either interrogatories or a request for the production of documents.
 

 Pursuant to La. C.C.P. art. 1474, the mailing of discovery pleadings to adverse parties, in accordance with La. C.C.P. art. 1313, satisfies the service requirement of La. C.C.P. art. 561. However, in order to satisfy La. C.C.P.
 
 *1076
 
 art. 561, it is necessary that any discovery be mailed to all the parties to the action.
 
 See Stillman v. Bd. of Supervisors of S. Univ. and Agric. and Mech. Coll.,
 
 07-2107 (La.App. 1st Cir.6/6/08), 992 So.2d 523, 525-26,
 
 writ not considered,
 
 08-1557 (La.10/10/08), 993 So.2d 1273;
 
 Benjamin-Jenkins v. Lawson,
 
 00-0958, p. 4 (La.App. 4th Cir.3/7/01), 781 So.2d 893, 895,
 
 writ denied sub nom. Jenkins v. Lawson,
 
 01-1546 (La.9/14/01), 796 So.2d 681. In the present case, Bayou Fleet does not dispute receiving any of DOTD’s letters by mail, but the record does not establish that any of the letters sent by these two parties were also served on Mr. Elsik, the other defendant in the suit. Thus, the letters were not “served on all parties” as required by La. C.C.P. art. 561.
 
 [4]
 
 Because DOTD did not establish service of “formal discovery” on “all parties,” it did not establish a “step” in the prosecution of the action.
 
 See Stillman,
 
 07-2107 at p. 4, 992 So.2d at 526.
 

 Accordingly, DOTD’s intent to obtain judicial resolution, evidenced by its filing of the motion for a preliminary default came too late-after the three-year abandonment period had expired. The intention to take a step in the prosecution of a claim without a step actually being taken is insufficient.
 
 Jones,
 
 95-0607 at p. 4, 665 So.2d at 34. After the abandonment has occurred, plaintiffs actions cannot resurrect the suit.
 
 See Clark,
 
 00-3010 at p. 15, 785 So.2d at 789.
 

 III. CONCLUSION
 

 For the above reasons, we find no error in the trial court’s granting of Bayou Fleet’s motion to dismiss DOTD’s action as abandoned. The jurisprudence, however, provides a court is without authority to dismiss an action with prejudice for failure to prosecute.
 
 See Jackson v. Moock,
 
 08-1111, p. 9 (La.App. 1st Cir.12/23/08), 4 So.3d 840, 846. Accordingly, the trial court erred in this regard, and we hereby amend the order of dismissal to delete the words “with prejudice” and to substitute the words “without prejudice.” Otherwise, the order of dismissal and the judgment denying DOTD’s motion to vacate the order of dismissal are affirmed. DOTD is assessed with appeal costs in the amount of $385.58.
 

 AMENDED AND, AS AMENDED, AFFIRMED.
 

 [1]
 

 . See La. C.C.P. art. 561 A(5).
 

 [2]
 

 . Louisiana Code of Civil Procedure article 561 A provides, in pertinent part:
 

 (4) A motion to set aside a dismissal may be made only within thirty days of the date of the sheriff’s service of the order of dismissal. If the trial court denies a timely motion to set aside the dismissal, the clerk of court shall give notice of the order of denial pursuant to Article 1913(A) and shall file a certificate pursuant to Article 1913(D).
 

 (5) An appeal of an order of dismissal may be taken only within sixty days of the date of the sheriff's service of the order of dismissal. An appeal of an order of denial may be taken only within sixty days of the date of the clerk's mailing of the order of denial.
 

 In this case, the sheriff served the order of dismissal on May 7, 2009, and DOTD filed its motion to vacate on May 28, 2009. The clerk mailed a certified copy of the order of denial on July 17, 2009, and DOTD filed its motion for appeal on August 3, 2009.
 

 [3]
 

 . Waiver is a cause outside the record that prevents accrual of the abandonment period. See
 
 Clark,
 
 00-3010 at pp. 15-16, 785 So.2d at 789.
 

 [4]
 

 . In this suit, DOTD acknowledges Article 561's requirement of service on all parties and asserts only that Mr. Elsik was not served because his whereabouts were unknown. Regardless, because Mr. Elsik had not been dismissed from the litigation, he still remained a party to the litigation.
 
 See Stillman,
 
 07-2107 at p. 4, 992 So.2d at 526.